**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**BENEDICT A. RIVERA,**

        **Plaintiff,**

**-vs-**                                                                                          Case No.  6:14-cv-2072-Orl-DAB

**SRI JALARAM, LLC, d/b/a HOLIDAY
INN EXPRESS-COCOA, and NETO'S
QUALITY SERVICES, INC., a/k/aNETO'S
HIGH QUALITY SERVICES, INC.,**

        **Defendants.**
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **MOTION FOR ENTRY OF DEFAULT JUDGMENT (Doc. No. 60)**
>
> **FILED:** June 14, 2016
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part.

*I. Background*

Plaintiff Benedict Rivera filed this employment discrimination action *pro se* on December 18, 2014 (Doc. 1). The original Complaint was dismissed, with leave to amend, and Plaintiff struggled to prosecute this action on his own.  On February 1, 2016, the Court appointed a *pro bono* attorney to represent Plaintiff (Doc. 45) and a Third Amended Complaint was filed against Defendants, Sri Jalaram, LLC, d/b/a Holiday Inn Express-Cocoa ("Holiday Inn") and Neto's Quality Services, Inc.,

a/k/a Neto's High Quality Services, Inc. ("Neto's") (Doc. 47). The operative complaint alleges a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, *et seq*. against Holiday Inn (Count I), a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, *et seq*. against Holiday Inn (Count II), and a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. against both Holiday Inn and Neto's (Count III).

Following service, neither Defendant appeared and the Clerk entered defaults (Docs. 55, 57). Plaintiff filed the instant motion for entry of a default judgment. Neither Defendant responded. The Court held an evidentiary hearing (Docs. 62, 63) and, based upon a review of the law and the facts as set forth in the pleading and admitted upon default and as developed at hearing, it is **respectfully recommended** that the motion be **granted, in part.**

### *II. Standard of Review*

When a defendant has failed to plead or defend, a district court may enter judgment by default. Fed.R.Civ.P. 55(b)(2). "[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (alteration omitted) (quotation marks omitted). Entry of default judgment is only warranted when there is "a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975).

"In considering any default judgment, the Court must consider (1) jurisdiction, (2) liability, and (3) damages." *Johnson v. Rammage*, No. 5:06-CV-057, 2007 WL 2276847, at *1 (M.D. Ga. Aug. 7, 2007) (*citing Pitts v. Seneca Sports, Inc.,* 321 F. Supp. 2d 1353 (S.D. Ga. 2004)). A defendant is not deemed to admit the plaintiff's allegations relating to the amount of damages. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court has an obligation to assure that

there is a legitimate basis for any damage award it enters ...."). Moreover, "A default judgment must not differ in kind from ... what is demanded in the pleadings." Fed.R.Civ.P. 54(c).

### *III. The Allegations of the Operative Complaint*

The Court accepts as admitted the well-pled allegations of the operative complaint, as supplemented by the uncontroverted testimony at the evidentiary hearing. To the extent the allegations are legal conclusions or are mixed allegations of law and fact, they are addressed more particularly in the analysis below.

According to the complaint and the evidence presented at hearing (and summarized by Plaintiff in separate filing at Doc. 64), Sri Jalaram, LLC owns the Holiday Inn, a hotel open to the public (Doc. 47, ¶ 3). Holiday Inn had more than 15 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and is a covered entity under Title I of the ADA. Plaintiff alleges that Holiday Inn is an enterprise under the Fair Labor Standards Act (*Id.*,¶¶ 32-33, 47).

Neto's is an employee staffing company that provides contingent, temporary, and permanent employee placement at the Holiday Inn (*Id*., ¶4). Plaintiff alleges that Neto's is an enterprise under the Fair Labor Standards Act, or alternatively, provided individual coverage under the Fair Labor Standards Act (*Id*. ¶48).

On or about June 2011, Neto's placed Rivera at the Holiday Inn (Doc. 47, ¶ 9). Neto's and Holiday Inn had a joint employment relationship as to Rivera because Neto's acted directly or indirectly in the interest of Holiday Inn. In addition, both Neto's and Holiday Inn retained the right to control Rivera. (*Id.*,¶49).

Rivera initially worked as a houseman at the Holiday Inn, performing general labor duties such as touch-up painting and repair to hotel amenities. Rivera was a nonexempt employee. From

June 2011 through December 2011, Rivera performed and completed his job duties, with no complaints from Holiday Inn. During this time, Rivera gradually assumed more job duties at the Holiday Inn, attaining the position of assistant executive houseman. His job duties in that position included maintenance of public bathrooms and the hotel lobby; placing various orders to enable the Holiday Inn to operate its business; cleaning and maintaining the swimming pool; cleaning and maintaining the fitness center; and running the laundry room. His duties as a houseman also included unloading goods ordered by the hotel that crossed state lines, and using a telephone to make interstate calls on behalf of Holiday Inn. Plaintiff affirmatively alleges that his job duties affected interstate commerce. While performing these duties, it was not unusual for Rivera to routinely work in excess of sixty (60) hours per week (Doc. 47, ¶¶11, 51-52).

Rivera was paid $8.00/hour in wages. Neto's issued Rivera's paychecks. The paychecks, however, never compensated Rivera for any hours that he worked in excess of 40 hours.[1] Although Rivera worked overtime on numerous occasions in November 2011 through March 2012, Holiday Inn and Neto's failed to pay Rivera for the overtime he worked. Holiday Inn and Neto's also violated the recordkeeping requirements of the FLSA by failing to keep and preserve Rivera's records for wages, hours, and other conditions and practices of employment. Rivera was damaged by Holiday Inn and Neto's failure to pay his overtime compensation. *(Id.,* ¶¶55-57*).*

Rivera became the *de facto* supervisor of the laundry room in December 2011, and directed staff within the laundry room as to how to perform their job duties (Doc. 47*,* ¶ 12). In that role, his job duties consisted of maintenance of public bathrooms, supervising the laundry room, and placing

---

[1] Rivera testified at the August 4, 2016 hearing that he worked 30–40 hours of overtime, on average, during from June 2011 through December 2011, but does not have all of his pay stubs. The average amount of overtime that Rivera worked from December 1, 2011 through March 29, 2012, based on the pay stubs in his possession, is 16.5 hours. *See* Hearing Exhibit 1.

orders on behalf of Holiday Inn with out-of-state vendors for many operational items such as soap, tissue, and toiletries that Holiday Inn needed for its business.

In January 2012, two upper management Holiday Inn employees approached Rivera and offered him a promotion to the position of executive housekeeper. While discussing the position, Rivera told these management employees that he would need an accommodation to perform his duties because he suffers from a disability and is legally blind in his right eye. The Holiday Inn ignored or refused Rivera's request for an accommodation. Ultimately, the Holiday Inn rescinded Rivera's offer of promotion to the position of executive housekeeper (Doc. 47, ¶¶ 12-16). Rivera was qualified to perform the job duties of executive housekeeper had Holiday Inn given him an accommodation, and he was damaged by the refusal to provide an accommodation (*Id.* ¶ ¶37-38).

After choosing not to promote Rivera, the Holiday Inn instead gave the position to a new employee, Stephanie Taylor ("Taylor"). As the new executive housekeeper, Taylor was one of Rivera's direct supervisors. Upon assuming the position of executive housekeeper, Taylor significantly cut back the hours that Rivera routinely worked at the Holiday Inn. Rivera's complaints to the Holiday Inn that his hours were being cut were to no avail. Taylor also, without cause, removed Rivera from the laundry room and relieved him of his job duties there. Taylor then required Rivera to perform other job duties, such as cleaning carpets throughout the Holiday Inn. Taylor refused Rivera's requests to use a commercial-grade carpet cleaner to perform the job. Instead, Taylor required Rivera to clean all carpets on his hands and knees, to the point where he developed bruises on same. (*Id.,* ¶¶ 17-21).

In May 2012, Holiday Inn's managers held a group meeting with Rivera where the Holiday Inn announced its intent to terminate Rivera's employment because, allegedly, business at the hotel was slow and Rivera's services were no longer needed. During the meeting, Rivera requested whether

he would be able to perform other job duties at the Holiday Inn, such as cleaning guest rooms. "Upon information and belief" Rivera was told that, although he had cleaned guest rooms on prior occasions, he could no longer do so because the Holiday Inn no longer permitted males to clean guest rooms. *(Id.* ¶¶ 22-24). Plaintiff avers that Holiday Inn, through its employees, discriminated against him on the basis of his gender by refusing to allow him to clean guest rooms at the Holiday Inn because he is male. Rivera alleges that he was qualified to clean guest rooms, and in fact, had competently done so at the Holiday Inn on numerous occasions. Rivera asserts that he was subject to an adverse employment action when the Holiday Inn refused his requests to clean guest rooms. He further contends that other employees at the Holiday Inn were treated more favorably on the basis of their gender and alleges that he was damaged by Holiday Inn's discrimination *(Id.* ¶¶40-45).

On August 24, 2012, Rivera filed a complaint with the United States Equal Employment Opportunity Commission (EEOC) (Doc. 47, ¶26). On September 19, 2014, the EEOC issued a dismissal and notice of right to sue (*Id.,* ¶27).

At hearing, Plaintiff testified that he has been unable to attain new employment, despite his efforts in searching for new employment after being terminated from Holiday Inn. Rivera has earned no income other than through social security disability, since May 25, 2012. He testified that as of the date of his termination, his hourly rate was $8.50/hour.

### *IV. Analysis*

As noted, Plaintiff has pled three counts against his former employers. The Court treats each, in turn.

#### Count I: Violation of Title I of the ADA (against Holiday Inn)

Count I alleges that Holiday Inn violated Title I of the ADA by discriminating against Rivera on the basis of a legal disability: a vision impairment (Doc. 47 at ¶¶ 31–38).

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities...; (B) "a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Title I of the ADA prohibits discrimination on the basis of disability for job application procedures; hiring, advancement, or discharge of employees; compensation; job training; and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). Title I discrimination includes the failure to make "reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business ..." 42 U.S.C. § 12112(b)(5)(A). To establish a *prima facie* case of Title I discrimination, a plaintiff must show that he (a) has, had, or was perceived to have, a "disability"; (b) was a "qualified" individual (meaning he could perform the essential functions of the job in question with or without reasonable accommodations); and (c) was discriminated against because of his disability. *See Williams v. Motorola, Inc*., 303 F.3d 1284, 1290 (11th Cir. 2002).

The factual allegations set forth above, which are deemed admitted by the default, coupled with the uncontroverted testimony of Plaintiff at the hearing establish each element of this claim. Rivera has established that he had a legal disability (significant vision impairment), but was nonetheless qualified to perform the job duties of executive housekeeper had Holiday Inn given him the requested reasonable accommodation, and was discriminated against because of that disability and damaged by the refusal to provide an accommodation (Doc. 47, ¶ ¶12-17, 35-38). The undersigned finds that Plaintiff has established liability against Holiday Inn on this count.

**Count II: Violation of Title VII of the Civil Rights Act (against Holiday Inn)**

Count II alleges that Holiday Inn violated Title VII of the Civil Rights Act by discriminating against Rivera on the basis of his gender (Doc. 47 at ¶¶ 39–45).

-7-

Title VII of the Civil Rights Act of 1964 prohibits an employer from discharging any individual, or otherwise discriminating against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of the individual's sex. 42 U.S.C. § 2000e-2(a)(1). A plaintiff alleging a violation under Title VII bears the burden of proving that an employer illegally discriminated against him. *Clemons v. Delta Air Lines Inc.*, 625 F. App'x 941, 943 (11th Cir. 2015), citing *Hinson v. Clinch Cnty. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000).

To establish a showing of discrimination based on circumstantial evidence, as Plaintiff argues is the case here, federal courts apply the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1202 (11th Cir. 2013). Under this framework, a plaintiff must first set out a prima facie showing. *Id.* A Title VII plaintiff can meet this by showing: (a) he was a member of a protected class; (b) he was qualified for the job; (c) he suffered an adverse employment action; and (d) his employer treated similarly situated employees outside the protected class more favorably. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). The employer must then articulate a legitimate, nondiscriminatory reason for its actions, and then the plaintiff must offer evidence that the alleged reasons of the employer are pretext for illegal discrimination. *McDonnell Douglas*, 411 U.S. at 802-04, 93 S.Ct. at 1824-25. "[A] reason cannot ... be a pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Clemons, supra,* quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993) (quotations omitted) (emphasis in original).

According to the motion, "Rivera suffered an adverse employment action when Holiday Inn terminated his employment." The allegations and the proof at hearing, however, do not establish that Plaintiff's gender was a reason for his termination. Plaintiff alleges:

> 22. In or about May 2012, Shah, Salter, and Taylor held a group meeting with Rivera where the Holiday Inn announced its intent to terminate Rivera's employment *because, allegedly, business at the hotel was slow and Rivera's services were no longer needed.*
> 23. During the meeting, Rivera requested whether he would be able to perform other job duties at the Holiday Inn, such as cleaning guest rooms.
> 24. *Upon information and belief*, Shah told Rivera that, although he had cleaned guest rooms on prior occasions, he could no longer do so because the Holiday Inn no longer permitted males to clean guest rooms.

(Doc. 47 emphasis added).

There was no proof at hearing or otherwise that the reason offered for the termination – that business was slow and his services were no longer needed – was a pretext. Nor does Plaintiff allege that he was replaced with a woman or that women in his position were treated more favorably. Moreover, the allegation is pled only "upon information and belief" and, at hearing, Plaintiff was vague regarding the alleged policy prohibiting males from cleaning guest rooms, as well as the details of that alleged conversation. Indeed, the testimony at hearing differed from this allegation, and both versions differ from the assertions Plaintiff offered in the Charge of Discrimination. *See* Doc. 11, p. 12. Too, cleaning rooms was not shown to be a part of his duties at the time he was terminated, so his termination could not be predicated upon a discriminatory failure to allow him to perform a duty that was not a part of his current job description.

To the extent the pleadings can be construed to allege an adverse employment action in failure to hire him for the position of room cleaner/maid, the Eleventh Circuit Court has observed:

> In a typical failure-to-hire scenario, the plaintiff establishes a prima facie case of unlawful discrimination by demonstrating that: "(1) she was a member of a protected class; (2) she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the

> position remained open or was filled by another person outside of her protected class."
> *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).

*Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1191-92 (11th Cir. 2016). Here, there is no showing that Holiday Inn was accepting applications for a maid, or that Plaintiff applied for such a position, or that the position was filled by a woman.

Even in the default context, Plaintiff must offer more than legal conclusions that he was terminated based on gender. The showing here is too conclusory and speculative to support a default judgment on this count. The Court recommends that the motion be denied, with respect to Count II.

**Count III - FLSA claim (against both Defendants)**

Count III alleges that Holiday Inn and Neto's violated the FLSA by failing to pay Rivera overtime wages that were due and owing. (Doc. 47 at ¶¶ 46–57).

The FLSA requires an employer to pay an employee overtime compensation for any hours worked in excess of forty in a given workweek, if that employee "is engaged in commerce or in the production of goods for commerce ['individual coverage'], or is employed in an enterprise engaged in commerce or in the production of goods for commerce ['enterprise coverage']." 29 U.S.C. § 207(a).

For "individual coverage" to apply under FLSA, Plaintiff must prove that he was: 1) engaged in commerce or 2) engaged in the production of goods for commerce. 29 U.S.C. § 207(a)(1). The work of employees "engaged in commerce" involves or relates to "the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof." 29 C.F.R. § 776.9 (quotation omitted). According to the Eleventh Circuit, for an employee to be "engaged in commerce" under the FLSA: he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work,

-10-

*e.g.,* regular and recurrent use of interstate telephone, telegraph, mails, or travel. *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (internal citations omitted). Employees are engaged in the production of goods for commerce if their work is closely related and directly essential to the production of goods for commerce. *Thorne,* 448 F. 3d at 1268.

Enterprise coverage applies where: (1) the employer has two or more employees regularly and recurrently engaged in commerce, or has two or more employees regularly and recurrently 'handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person' and (2) the employer's annual gross volume of sales is $500,000 or more. *See Dent v. Giaimo*, 606 F.Supp.2d 1357, 1360 (S.D. Fla. 2009) (citing 29 U.S.C. § 203(s)(1)(A); 29 C.F.R. § 779.238).

In the default context, to establish a claim under the FLSA for unpaid overtime compensation, a plaintiff must allege facts and not mere conclusions of law. "The complaint must contain facts showing the plaintiff is within the terms of the Act, which requires a sufficient allegation of facts showing the plaintiff is engaged in or is employed in an enterprise engaged in commerce or the production of goods for commerce." *De Lotta v. Dezenzo's Italian Restaurant, Inc.*, 2009 WL 4349806, at *2-5 (M.D. Fla. 2009).

Applied here, there is no proof sufficient to find that either Defendant is an "enterprise" under FLSA. However, as alleged in the Complaint and elaborated upon at hearing, in his position as houseman and *de facto* laundry room supervisor, Plaintiff regularly and routinely used the telephone to place interstate orders for the business for necessities, such as cleaning supplies and guest toiletries, the delivery of which crossed state lines and affected interstate commerce. Absent evidence or argument to the contrary, the Court finds that the frequent interstate telephonic use is sufficient to support individual coverage under FLSA. *See, e.g., Obando v. M & E Inv. Properties, Inc.,* No.

11-CV-20318, 2011 WL 4387238, at *3 (S.D. Fla. Sept. 20, 2011) (maid's testimony that she regularly answered the phones at hotel and helped guests arrange interstate travel to and from the hotel raised a factual question of individual coverage precluding summary judgment).

Plaintiff has alleged that Defendants were joint employers, jointly liable to pay wages. Two entities may act as the employer of a single individual under a theory of joint employment. 29 C.F.R § 791.2. When employers act independently and are "completely dissociated," they are not joint employers. *Id*. But when facts establish that "employment by one employer is not completely disassociated from employment by the other employer(s)" or "one employer controls, is controlled by, or is under common control with the other employer," then joint employment may exist. *Id*. *Gerondidakis v. BL Rest. Operations, LLC*, No. 8:12-CV-00096-EAK-MA, 2012 WL 2872849, at *6 (M.D. Fla. July 12, 2012).

> Under the FLSA, an "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency,..." 29 U.S.C.§ 203(d). To "employ" is defined as to "suffer or permit to work." 29 U.S.C.§ 203(g). The Supreme Court has held that courts should apply these terms in light of the "economic reality" of the relationship between the parties. *Goldberg v. Whitaker House Co-op., Inc*., 366 U.S. 28, 33, 81 S.Ct. 933, 936-37, 6 L.Ed.2d 100 (1961).
>
> The economic reality test includes inquiries into:
>
>> whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.
>> *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir.1983).

*Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997). Applied here, the evidence at hearing supports Plaintiff's allegations that Holiday Inn and Neto's are joint employers. Plaintiff has shown

-12-

that they both controlled Rivera's work and, although Rivera's paychecks came from Neto's, a staffing agency, Holiday Inn directed his work on a daily basis.

On the merits, the evidence shows that Plaintiff worked overtime, but was not paid his overtime wages. Absent any showing controverting the allegations, as supplemented by the record evidence, the Court concludes that a FLSA violation has occurred and Defendants are jointly liable for same.

**Damages**

With respect to the ADA claim, Plaintiff sought compensatory damages in the amount of back pay, to be calculated at $340 a week ($8.50/hour multiplied by 40) from the date of termination until entry of judgment, as well as an unspecified amount of emotional distress damages and punitive damages for this claim. At hearing and in his papers, however, Plaintiff avers that he has been receiving social security disability (*see* Doc. 2, p. 6), a benefit that is awarded only upon an admission and finding that Plaintiff is not capable of any substantial gainful work activity. It is therefore not appropriate to award back pay for any period of time in which Plaintiff was not a "qualified individual," as required. "When the evidence establishes that a claimant would have terminated her employment voluntarily prior to the date of judgment, the earlier date must be used for back pay calculations. In circumstances such as these, "[t]he court must 'do its best to recreate the conditions and relationships that would have existed if the unlawful discrimination had not occurred.'" *E.E.O.C. v. Joe's Stone Crab, Inc.*, 15 F. Supp. 2d 1364, 1378 (S.D. Fla. 1998), quoting *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1580 (7th Cir.1997) (reversing back pay award where evidence showed that employee intended to quit her job before she was illegally terminated) (quoting *United States v. City of Chicago*, 853 F.2d 572, 575 (7th Cir.1988)). As there is no showing as to exactly when Plaintiff was no longer a qualified individual, an award of back pay for no more than one year is the

most that is warranted here. As such, Plaintiff is entitled to back pay in the total amount of $17,680.00 ($340 a week times 52 weeks).

As for the other damages for Count I, while the Court has no doubt that Plaintiff suffered some degree of emotional distress at losing his job, the evidentiary showing made here is insufficient for the Court to formulate a damage award based on such distress. Moreover, the Court finds no basis for an award of punitive damages on this record.

With respect to the overtime violations pled in Count III, the record is not fully developed, due to Defendants' default and the incomplete records. Nonetheless, using the pay stubs retained by Plaintiff and his testimony, the Court finds the following by just and reasonable inference:

At a rate of $8/hour, the overtime rate of $12.00/hour (time and a half) multiplied by 16.5 hours (this is the average amount of overtime that Rivera worked, based on the pay stubs in his possession), the Court determines that Plaintiff was damaged in the amount of $5,148.00, for the 26 week period from June 1, 2011 to November 30, 2011. As for the period from December 1, 2011 through March 29, 2012, the Court accepts the damage calculations provided by Plaintiff in his papers, and supported by the pay stubs and testimony introduced at hearing, and determines that Plaintiff is owed $3,162.00 in unpaid overtime wages for that period. Neto's and Holiday Inn are also liable to Rivera for liquidated damages under the Fair Labor Standards Act,[2] in an amount equal to the amount of unpaid overtime wages. Therefore, the Court finds that Plaintiff is entitled to $16,620.00 in unpaid overtime and liquidated damages.

Further, under FLSA, Plaintiff is also entitled to an award of reasonable attorney's fees and costs. 29 U.S.C.§ 216(b) provides that in an FLSA action seeking unpaid wages and overtime the

---

[2]Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of ... their unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C.§ 216(b).

Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id*. Section 216(b) has been interpreted to mean that "fee awards [are] mandatory for prevailing plaintiffs." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985) (citation omitted); *see also Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987). The determination of a reasonable fee under this provision, however, is a matter within the sound discretion of the trial judge. *King v. McCord*, 621 F.2d 205, 206 (5th Cir.1980).

To calculate a reasonable award of attorney's fees, the court applies the familiar lodestar approach of multiplying the reasonable hourly rate by the reasonable hours expended. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (*citing Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984)).

In determining what is a reasonable, this Court is mindful of the factors identified in *Johnson v. Georgia Highway Exp.*, *Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974),[3] namely: (1) time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[3]*Johnson* was overruled on other grounds, *Blanchard v. Bergeron*, 489 U.S. 87 (1989).

The Court has considered the Affidavit of Coleman Watson (Doc. 60-1), the attorney appointed by the Court, and has reviewed the time entries and the cost ledger. The Court has further considered the *Johnson* factors in formulating an appropriate award. Mr. Watson claims an hourly rate of $295 an hour, which is within the appropriate range for litigation in federal court in this district for counsel with similar experience. The time claimed appears to be reasonable and necessary here, especially in view of the state of the litigation at the time counsel was appointed. Counsel reasonably expended 34 hours on this matter, considering the complexity of the dispute and the need for attendance at an evidentiary prove-up hearing. Therefore, the Court calculates the lodestar as $295 x 34 = $10,030.00. The Court finds this amount to be appropriate, and recommends its inclusion in the judgment.

As for costs, the Court finds counsel is not entitled to reimbursement for postage or the search fee, but the service of process charge and document duplication charges are appropriately taxed and should be included in the judgment (total $269.89).

### *V. Recommendation*

Therefore, it is **respectfully recommended** that the motion be **granted in part** as follows:

a) Default judgment be entered in favor of Plaintiff and against **SRI JALARAM, LLC** in the amount of $17,680.00, with respect to the ADA claim;

b) Default judgment be entered in favor of Plaintiff and against both Defendants, jointly and severally, in the amount of $26,919.89, inclusive of attorneys' fees and costs, with respect to the FLSA claim; and

c) The motion be **denied,** with respect to the Title VII claim.

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion.

Recommended in Orlando, Florida on August 18, 2016.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy